The third case for argument is United States v. Ryan Thompson Mr. Huddleston Good morning, Your Honor. My name is Dan Huddleston, and I represent the appellant, Ryan Thompson. I plan to focus my argument today on the hearsay and confrontation clause issues, and unless the Court has questions, I will rest on our briefing with regard to this sentencing issue. The district court committed a reversible error in admitting testimonial hearsay over objection during the testimony of the case agent, Special Agent Lopez. Specifically, Special Agent Lopez testified that Brianna Goodrider, who is Mr. Thompson's girlfriend and also lived in the house, told Special Agent Lopez that Ms. Goodrider was not the person shown in the charged images. This testimony was crucial because Ms. Goodrider did not testify at trial, and the jury did not hear anything else from Ms. Goodrider specifically. More so, the jury did not see any pictures of what Ms. Goodrider looked like at the time, and there was no testimony about Ms. Goodrider's appearance, only that she was pregnant, but not any indication of whether that pregnancy was showing at the time. Counsel, does the tattoo make this harmless? No, Your Honor, because the element that we are contesting on appeal is not whether Mr. Thompson is the person whose tattoos are seen in the photos. The element we're contesting on appeal is whether it is a minor who is the other person in the photos. So we agree that Mr. Thompson's tattoos are there, but it's a question of whether a minor is shown in the photos. I mean, it's a question of the identity. Didn't the minor testify that it was her, it was she in the photo? The minor did testify that way, Your Honor. So are we down to a credibility call? Her credibility, exactly, was central to the trial. And does that mean that any error is harmless? You have the tattoo plus the victim testifying. I don't see how what the girlfriend said matters. The fact that the minor testified and testified that it was her making the trial a credibility call does not mean that the error was not harmless, Your Honor. And specifically on that point, we can see in the Eighth Circuit's decision in Bercier, cited in our reply brief on pages 17 and 18, that the fact that a minor victim testifies in a case where credibility is central, the minor's testimony alone does not make any error admitting hearsay harmless. So in Bercier — What's the Eighth Circuit case for that? Bercier, Your Honor, B-E-R-C-I-E-R, and its application here. So in Bercier, the test that we see laid out for whether that additional support coming from the hearsay of — the additional support for the minor's testimony coming from inadmissible hearsay is harmless depends on several factors. But there, there was no tattoo, right? There was only the minor testifying. There was no — Was there a picture in that case in Bercier? There was not a picture, Your Honor, but critically it was — what was at issue was whether the sex in that case was consensual. Right. So solely the minor's testimony, and here you add the tattoo. Well, there the issue was whether the sex was consensual, and so they were conceding that sex had happened, much like we're here, where we're agreeing that Mr. Thompson was one of the people in the photos. But the issue in Bercier, as here, is slightly different than whether the defendant was involved. And so the statement by our Court — and I may be the author, so hold me harmless — the statement by our Court that the case turned entirely, I'm quoting, on the credibility of the minor victim is, in your view, an exaggeration? No, Your Honor, because it turned on the credibility of the minor victim there with regard to the use of force. And so it can still turn on the credibility of the minor victim, even when the defendant agrees that they were involved in the act at issue. And so there the case turned on the credibility of the minor victim. Yeah, but it says entirely. You left out entirely. It was the adverb entirely. I thought that was misleading. Your Honor, we agree that this turns entirely on the testimony of the minor victim as well here, though. So we think that whether the minor is the person shown in the photos depends on the minor's testimony entirely and the credibility of the minor entirely, because, for example, you can't see the person's face, who the minor testified that they were in the photo. And so we agree that Mr. Thompson's hand is there, but the issue of who the other person is in the photo depends entirely on the credibility of the minor's testimony in this case, as Berseer turned entirely. I thought the evidence was that the photos were taken with the phone that belonged to the minor. Yes, Your Honor. We don't think that that was the evidence. We don't think that. And also that there's evidence that the defendant was in possession of the phone at the time. There's also evidence that the defendant attempted to wipe the phone. Let me address all three, Your Honor. So there is the evidence that the defendant is – that the photos were taken on the minor's phone. There's the evidence that the – in addition to that, that the photos – if you look at the metadata in the government's exhibit of the photos, that the GPS location comes back to that house, and that house is mapped in one of the government's exhibits as well. And there you see – but there's also the testimony from other individuals that Ms. Goodrider, who is the defendant's girlfriend, lived in that same home. And so the fact that the photos were taken on the minor's phone after the phone was confiscated from the minor does not necessarily mean that the minor is the person shown. When the photos were taken in the home, the jury could have found that Ms. Goodrider, who also lived in the home, was the person who was shown. And so when we have those circumstances, we don't think – it still depends on the credibility of the minor. And then in terms of the deleted photos, that does not necessarily mean that the – that they were deleted because they were a minor. The jury could have found that they were deleted had the jury not heard from Special Agent Lopez's testimony that Ms. Goodrider said she was not the person in the photos. The jury could have thought and defense counsel could have argued that the photos had been deleted because they might be embarrassing or something like that given the intimate nature of them. It seems to me significant that the defense didn't go call Ms. Goodrider. Your Honor. She was almost presumptively biased in favor of the defense, and the government says, well, we're not going to call her, and you think this – this aspect of what she might have been able to testify is critical to the conviction. I say you should have called her. Your Honor, in this confrontation and hearsay context, it's not the defense's burden to call the witness. It's the government's burden to show. The jury is, heck, relevant to harmless error. You didn't think – the trial lawyer didn't think it was harmful, so harmful that he had to do the obvious – take the obvious step to refute it. Your Honor, additionally, Ms. Goodrider was – I'm not certain this is in the record, so I acknowledge that, but Ms. Goodrider was originally on the government's witness list and then was not called by the government after this testimony. Yes. So the way this played out, defense counsel said, well, I'm going to call her. I want a subpoena. Your Honor, it's still the government's burden, though, to show that Ms. Goodrider was unavailable to testify and there was a prior opportunity to cross-examine. I'm sorry. I think not. You can find 43 cases that might say that's an element of this. But in this situation, in the real world, the government played its hand and made clear what it was going to do and took advantage of the ruling to the extent it was definitive, and defense counsel sat there. Your Honor, defense counsel objected to the ruling, which was – Yeah, well, sure. And then when you lose that, now you've got – now what's the next play? But the issue here is what the evidence was in front of the jury on this harmless error analysis. And our position is that the jury, without this evidence, it is a question – on a harmless error review, it's a question of – But, Judge Benton, my colleagues have laid out all of the evidence the jury had to base a decision on. Yes, Your Honor. And even with that evidence, without Ms. Goodrider's statement, the jury could have found that the photo taken on that phone in that house was Ms. Goodrider. Could have. But, you know, just call the witness and make the argument after the witness testifies. So the inference to me is the defense knew calling her would not be productive. I don't think that's a permissible inference for the Court to make on harmless error review, though. It's not a question of what defense counsel should have done in light of that. Harmless error review requires all kinds of inferences. Yes, Your Honor. Inferences about what – Indirect and obvious and not so obvious. Inferences about what the jury could have found from the evidence before them. And rather than inferences about what defense counsel might have done to try the case differently. And I see my time has expired. We would ask the Court to vacate the conviction and sentence and remand. Thank you. Mr. Nelson. Thank you, Your Honor. And may it please the Court, Nathan Nelson on behalf of the United States. The government in this case agrees that the FBI agent's testimony, insofar as it recounted the defendant's girlfriend, Brianna Goodrider, telling the agent that she was not the person depicted in the pornographic photos, was inadmissible testimonial hearsay. Nevertheless, this Court should affirm the judgment of the district court and should do so regardless of whether it applies the standard for plain error, as the government has advocated, or the standard for preserved errors, as the defendant has advocated. And that's because the agent's brief reference to – three statements and or reactions that were identified here and are argued to be hearsay. You're not agreeing that all of them were? No, Your Honor. The way this came in was as follows. You're not talking about the verbal responses. You're not talking about the third one, which was the visible reaction. That's correct, Your Honor. So it starts on page 583 of the transcript. The FBI agent is asked if she spoke with Ms. Goodrider. That's okay. You don't – I just wanted to – No, you're correct, Your Honor. So – No, go ahead. To focus on the harmlessness issue, because I think that's really where this case turns, the only material disputed issue at trial was whether the minor victim was the person depicted in the pornographic photos. And on that specific point, the evidence was overwhelming. As Your Honors have noted, the minor victim testified and she identified herself in the photos. The district court explicitly found that sentencing the minor victim's testimony to be credible. And it was also supported by prior consistent statements. And I'll note there was no evidence of any kind linking someone other than the minor victim to the person depicted in those charged photographs. Well, the girlfriend, right? That's what they're trying to say, correct? There was testimony that the girlfriend lived in the same house.  But for example – And that would be what they try to get before the jury, that the body depicted there was the girlfriend's. Correct. And there was no evidence that she was similar in body type to the person depicted in the photographs. I agree with that. But there were no photos put in comparing or any kind of real evidence. That's correct. More importantly, more importantly, the Brashear case was not mentioned until the reply brief. I don't think your reply responded to it. That's correct, Your Honor. I didn't see a 28J or any other response to it. And when you read some of the language from it, it is like this case. So tell me what you do with the Brashear case. Here's where I think this case is different from Brashear, because I strongly believe that this case does not turn solely on the credibility of the minor victim. And here's why, Your Honor. What makes the evidence overwhelming in this case is that before the minor victim was ever shown or ever saw these pornographic photos by police or investigators, she demonstrated knowledge of what was in those photos that could only be explained by her having been present when they were taken. And I'm referring to the December 9th forensic interview. It's recorded. It's Government's Exhibit 25C. I encourage the Court to watch it if you haven't already. But it was played for the jury. And in that interview, again, before she ever saw these photos, she described the exact nature and details of those photographs. She described correctly the who, the what, the where, the when, and the how of the photos. So starting with the who, she said she told the interviewer her dad had taken photos of her, Mr. Thompson. That, as we've heard today, is correct and undisputed, that the defendant is the person taking the photos. She correctly identified the what. She said she was lying on her stomach when the photos were taken. That's accurate. She said she took the photos with her clothes off. Also accurate. She said the defendant took the pictures of my butt, which also is accurate. All five images are of the minor victim's buttocks. And that he kept taking pictures, essentially saying there were multiple photos. Also correct. The Government introduced five photos in the trial. She correctly identified the where. She said she was on her bed when the photos were taken. That is also accurate. In Government's Exhibit 20, the video that was taken, you can see the entire, her entire bedroom, the wall hangings, the wall color, the bed. And here's what's really critical. She also said the pictures had been taken on Thursday. She correctly identified the when, because the Thursday before the forensic interview was December 3, 2020, and that is the exact date as indicated in the metadata of the charged photographs. Finally, she identified the how. She said, you know what, my dad, the device used to take the photos was my phone. Also accurate. And that proved to be accurate at trial. So in sum, when the minor victim knows, without ever seeing these photos, the who, the what, the where, the when, and the how they were taken, that's knowledge that I think the jury can look at and say the only can reasonably be explained by her being the person. But in Brashear, the victim talks about the who, what, when, where, how of the force involved. How is Brashear different? Correct, but this, you know, I think a CP production case is different because the photographs are the almost crime scene. The photographs are the criminal act. And the minor victim wouldn't have any way of knowing what was depicted in those photographs. She's not just recounting a sexual assault, for example. She's saying she knows what's in photographs that she has never seen, which can only be explained by her having been there when they were taken. But that's not all either, Your Honor. We also, as Your Honor has pointed out, there's strong evidence of consciousness of guilt. The defendant deleted the offending photographs before surrendering the phone to police. And, in fact, there was evidence that the last thing that was done on the phone before it was surrendered to police was to close out of the photo app. And, indeed, the photos were found in the trash bin of the phone. And so I think that shows strong evidence of a consciousness of guilt, an attempt to conceal or destroy the photographs. That shows there were not lawful images of an adult, but images that the defendant knew were wrongful and unlawful. There's also objective evidence in the form of this video that was taken. Objective evidence that these photos were taken and this video were taken inside the minor victim's bedroom. In the video in particular, I admit the photos are mostly zoomed in on the subject, on the minor victim. But in the video in particular, you can see the minor victim's distinctive blanket. It matched another government's exhibit, Government's Exhibit 7. It was just a photo of her room for context. You can see the color of the wall. You can see the exact same wall hangs that were shown in Government's Exhibit 7. And I think there's a reasonable inference, keep in mind these photos were taken at night, just shortly after midnight, that if they're taken inside what everyone agrees is the minor victim's bedroom, that it was the minor victim that was occupying that bedroom, because people tend to be in their bedrooms at night. So in sum, Your Honor, I think the introduction of testimonial hearsay in this matter was harmless beyond a reasonable doubt. In light of the minor victim's credible testimony, supported by prior and consistent statements, in light of her detailed and accurate knowledge of the details of the photographs, without ever having seen them, in light of the defendant's consciousness of guilt, in light of the objective evidence that the photos were taken inside the minor victim's room, and the complete absence of any other evidence linking some non-minor to these photographs. The last point I'll make, unless the Court has any other questions, is I'd also look at how, what the Government did at closing. No one repeated this FBI agent's statement that Ms. Goodrider didn't identify herself or said it was not her in the photographs. And so I think harmlessness here is also demonstrated by the fact that the Government did not rely in any respect on the testimonial hearsay in either its closing or its rebuttal argument. Certainly, there was argument that it wasn't Ms. Goodrider. You know, we argued that it wasn't Ms. Goodrider, but that was based on the overwhelming evidence that it was the minor victim. And then we referenced also Ms. Goodrider being pregnant and the evidence that the defendant and her were going through a rough patch. So in light of that overwhelming evidence and the fact that the Government didn't rely on this testimonial hearsay, the Court should find it to be harmless whether it applies a plain error or preserved error standard and should affirm the judgment of the district court. Unless the Court has any other questions, I thank you for your time. Thank you. I'll give you a minute. Thank you, Your Honor. Just briefly to address two points that the Government brought up. First, on the idea that the minor victim's credibility was not central to the trial because of the minor's testimony about the contents of the photos, the Government is still relying on the minor's credibility in, say, in that argument, though, because it depends on the minor's credibility in her testimony that she had not seen the photos previously. And then lastly, in terms of the Government's argument about not relying on Ms. Goodrider's statement during its closings and rebuttal, I don't think that the Government can separate, say, in both closing and rebuttal, that the photos were not Ms. Goodrider. That can't be separated from Special Agent Lopez's testimony that Ms. Goodrider told her it was not her in the photos. So with that, Your Honor, we would ask that the Court vacate the sentence in conviction and remand. Thank you, counsel. Case has been well briefed. Argument has been helpful. You both properly, aggressively defended your position and helped clear up some things, at least for me. So we will take it under advisement. Thank you.